# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Action No. 09-cv-00637-REB

KING SOOPERS, INC.,

    Plaintiff and Counterclaim Defendant,

vs.

UNITED FOOD & COMMERCIAL WORKERS UNION, LOCAL NO. 7

    Defendant and Counterlaimant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matters now before me are (1) **Plaintiff's Motion to Supplement the Administrative Record** [#22][1] filed June 30, 2009; (2) **Plaintiff's Motion for Summary Judgment and Supporting Memorandum Brief** [#27] filed July 17, 2009; and (3) **Defendant's Motion for Summary Judgment** [#28] also filed July 17, 2009. The parties have filed responses and replies addressing all of the motions.[2] I deny the Plaintiff's motions and grant the Defendant's motion.

## I.  JURISDICTION

I have jurisdiction over this matter pursuant to Section 301 of the Labor

---

[1] [#22] is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] The issues raised by and inherent to the motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand as submitted on the papers. *See* **Fed. R. Civ. P. 56(c)**, **(d)**; *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.1988) (holding that the hearing requirement for summary judgment motions is satisfied by a court's review of documents submitted by parties).

Management Relations Act of 1947, as amended, codified at 29 U.S.C. §185(a).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

The moving party bears the initial burden to show the absence of a genuine issue of fact.  **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 514 U.S. 1004, 115 S. Ct. 1315, 131 L. Ed. 2d 196 (1995). Once the motion has been properly supported, the burden shifts to the non-movant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  **Id.** at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  **Simms v. Okla. ex rel. Dep't of Mental Health and Substance Abuse Servs.**, 165 F.3d 1321, 1326 (10th Cir. 1999) **cert. denied**, 528 U.S. 815, 120 S. Ct. 53, 145 L. Ed. 2d 46 (1999).  However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.  **Rice v. United States**, 166 F.3d 1088, 1092 (10th Cir. 1999), **cert. denied**, 528 U.S. 933, 120 S. Ct. 334, 145 L. Ed. 2d 260 (1999).

## III. BACKGROUND[3]

Plaintiff and Counterclaim Defendant King Soopers, Inc. (hereinafter, the "Plaintiff") runs a chain of grocery stores in Colorado and elsewhere in the country through a partnership with other chain stores. David Archuleta worked for the Plaintiff as a customer service clerk and, through his work, was affiliated with Defendant and Counterclaim Plaintiff United Food & Commercial Workers Union, Local No. 7 (hereinafter, "the Defendant"). Mr. Archuleta was terminated from his employment with the Plaintiff in 2005, after having worked for the company for approximately ten years.

In his former employ, Mr. Archuleta performed cash transactions. Mr. Archuleta's termination arose out of an April 9, 2005, incident in which he was accused of stealing two five-dollar bills from his cash drawer. On the date in question, Mr. Archuleta arrived at the store, doffed, hung up his coat, and donned an apron to work a morning shift. He took a break for a noontime repast and left the store premises in search of aliment. By Mr. Archuleta's account, he did not remove his apron when he left, and he placed the change he received from his luncheon purchase – two five-dollar bills – in his apron pocket. He returned to work in a timely fashion after his respite and completed his shift.

The Plaintiff maintains several surveillance cameras in the store in which Mr. Archuleta worked. One of these cameras captured Mr. Archuleta as he prepared to turn in his cash drawer at the end of his shift. The footage showed Mr. Archuleta removing two bills of currency from the drawer. Shortly after the camera made this recording, a security officer called Mr. Archuleta and the store manager into a security room. The officer and manager accused Mr. Archuleta of stealing the money in violation of the

---

[3] I have assembled the following facts from the parties' briefs and from the arbitration award brief that both parties cite in this case. Except where noted, the facts I set forth are not subject to dispute.

company's policies against dishonesty. Mr. Archuleta evidently tried to explain to the store manager that he was retrieving his own money – the change he received after purchasing his lunch earlier – from the cash drawer. The manager did not believe Mr. Archuleta and suspended his employment.

In response, Mr. Archuleta filed a grievance pursuant to the Plaintiff's company policies. During an interview with the store manager held as part of grievance procedures, Mr. Archuleta evidently attempted to clarify his prior explanation by stating that on the day in question, he had misplaced his wallet and had carried cash on his person. He explained that he had placed his own cash on top of the money in the cash drawer as he was preparing to leave for the day and that the camera had recorded him retrieving his own monies from the drawer. Again, the store manager did not believe Mr. Archuleta, and the Plaintiff terminated his employment, effective April 18, 2005. Mr. Archuleta brought a second grievance pursuant to a collective bargaining agreement between the parties to this case, but the Plaintiff remained dissatisfied with Mr. Archuleta's position. In August, 2008, the Plaintiff and the Defendant, on Mr. Archuleta's behalf, submitted to arbitration of Mr. Archuleta's two grievances.[4]

## IV.    PROCEDURAL HISTORY

On December 1, 2008, the arbitrator granted an award in favor of Mr. Archuleta and issued a brief detailing the rationale underlying her decision (hereinafter, the

---

[4] The collective bargaining agreement between the parties contained a provision mandating that no Union-affiliated employee could be discharged "without good and sufficient cause" [#1, Ex. A-1 at 41-42]. The agreement provides for a two-step grievance procedure to resolve issues between parties. If the parties cannot resolve issues between themselves after undertaking two grievances, either party may request arbitration by an impartial arbitrator, and the "finding or award of the arbitrator shall be final and conclusive upon the parties" [#1, Ex. A-1 at 43-44]. The parties do not suggest that arbitration of Mr. Archuleta's grievances was unauthorized or otherwise improper.

"Award Brief").[5] In the Award Brief, the arbitrator noted that the parties had stipulated to two subject issues and that the Plaintiff had submitted a third issue, to wit:

1. Did [the Plaintiff] suspend [Mr. Archuleta] for good and sufficient cause? If not, what is the appropriate remedy?

2. Did [the Plaintiff] terminate [Mr. Archuleta] for good and sufficient cause? If not, what is the appropriate remedy?

3. Did [the Plaintiff] discriminate against [Mr. Archuleta] or discharge him because of membership in the [Defendant] union and/or for upholding union principles? If so, what is the appropriate remedy?

The arbitrator then made factual findings, describing the events on the day in question. She explained that in making her findings, she relied on many viewings of the aforementioned surveillance camera video footage as well as testimony from Mr. Archuleta and from other witnesses who were the Plaintiff's employees.

It comes as no surprise that the factual findings most subject to contention in the motions at bar all relate to the source of the two five-dollar bills Mr. Archuleta retrieved from the cash drawer. The arbitrator stated that she watched the video with the benefit of simultaneous, step-by-step testimonial commentary from Mr. Archuleta. According to the arbitrator, Mr. Archuleta testified that as he was preparing to turn in the cash drawer, he removed from his apron pocket his keys and the two five-dollar bills he had received earlier as change. He stated that he placed a daily close-out accounting sheet on top of the cash in the drawer and placed the keys and cash on top of the accounting sheet. He then explained that as he took the drawer from a staging counter to a closet that he intended to enter to pick up his coat in order to leave, he bumped into a wall. He stated that the collision jostled the drawer, causing the accounting sheet paper to fall to the

---

[5] The language I quote and summarize may be found in the record at exhibit A-3 to the complaint [#1, Ex. A-3].

-5-

ground and his keys and cash balanced thereupon to fall into the drawer. Mr. Archuleta explained that once he entered the closet, he retrieved his cash from the drawer, obtained his coat, and prepared to leave his shift.

The Plaintiff's representatives and witnesses disputed (and continue to dispute) Mr. Archuleta's account. According to the arbitrator, they maintained that Mr. Archuleta entered the closet with the purpose of secreting himself in order to thieve the five-dollar bills. However, the Plaintiff's representatives did not rebut or respond to Mr. Archuleta's specific explanations and offered no independent proof that Mr. Archuleta had indeed stolen the money.

The arbitrator stated that she found Mr. Archuleta's testimony credible and his explanations plausible. Accordingly, the arbitrator found that because the Plaintiff had failed to offer any rebuttals or independent proof, it had not met its burden to present "clear and convincing evidence that [Mr.] Archuleta actually took money that was not his own out of the cash pan" and, therefore, had not satisfied its burden to establish that it suspended and terminated Mr. Archuleta's employment for good and sufficient cause. *Complaint,* [#1], Ex. A-3 at 11 (hereinafter, the "Arbitration Award"). In conclusion, the arbitrator ordered the Plaintiff: (1) to offer Mr. Archuleta reinstatement in his previous job with full seniority; (2) to make Mr. Archuleta whole by paying back-pay, crediting him with sick leave and vacation time, and making retroactive contributions to his pension; and (3) to remove all references to Mr. Archuleta's termination from his employment record. *Id.*, p. 14. The arbitrator ordered that such action be taken within sixty days of issuing the Award Brief, unless the Defendant consented to an extension.[6]

---

[6] I gather from the briefing before me that after the arbitrator issued the Award Brief, the parties engaged in discussions in an apparently vain attempt to arrive at an alternate resolution of this case [#1, Ex. A-4 at ¶¶ 2-3]. It appears that the Plaintiff has not complied with the Award Brief order because it

-6-

On March 23, 2009, the Plaintiff filed its complaint [#1] seeking to vacate the Arbitration Award, arguing that the arbitrator made mistakes of fact and misinterpreted the tape from the surveillance camera depicting Mr. Archuleta's removal of money from the cash drawer. The Defendant answered the complaint and filed counterclaims for breach of contract and to enforce the Arbitration Award. Now pending before me are the parties' motions for summary judgment [#27 & #28] on their own and each other's claims and a hotly contested motion [#22] to supplement the record with a copy of the aforementioned surveillance video camera footage depicting Mr. Archuleta removing money from the cash drawer. I address each motion in turn.

V.  ANALYSIS

   A.   **The Plaintiff's Motion for Summary Judgment**

The Plaintiff argues that it is entitled to summary judgment and that the Arbitration Award should be vacated because the arbitrator erred in her reliance on the aforementioned surveillance camera video footage. More specifically, the Plaintiff argues that the arbitrator mistakenly found that the video footage showed: (1) that Mr. Archuleta bumped into a wall while holding the cash drawer, thereby, knocking his keys and his own money into the drawer; and (2) that two loose five-dollar bills were in Mr. Archuleta's cash drawer, laying on top of a stack of five-dollar bills and facing in a different direction than the stacked bills. The Plaintiff argues that the video does not establish these facts, that there is no support for these findings in the record, and that the arbitrator impermissibly relied on these facts in arriving at her decision.

In support of these contentions, the Plaintiff points me to an exiguous number of cases from the Appellate Courts for the Third, Sixth, and Eighth Circuits standing for the

---

believes that arbitrator incorrectly arrived at her conclusions.

proposition that if examination of the record before an arbitrator reveals no support for determinations that are central to the arbitrator's decision, or if there is no dispute that the arbitrator made an error in arriving at such determinations, then the arbitration award must be vacated. **See Nat'l Post Office Mailhandlers v. United States Postal Serv.**, 751 F.2d 834, 843 (6th Cir. 1985) (holding that when an arbitrator relies on an "unambiguous and undisputed mistake of fact" in making an award, it must be vacated); **United Electrical, etc. v. Litton Microwave Cooking Products, Litton Systems, Inc.**, 704 F.2d 393, 396-97 (8th Cir. 1983) ("[I]f the arbitrator assumes the existence of a fact that is central to the award, and an examination of the record reveals no support whatever for the arbitrator's assumption, an award cannot stand.");[7] **accord NF&M Corp. v. United Steelworkers of Am.**, 524 F.2d 756, 760 (3d Cir. 1975). The Defendant counters that the arbitrator's factual findings are beyond review, or, if they are not, any factual error in this case is disputed, is supported by record evidence, and does not play an important role in the arbitrator's decision.

Before turning to my analysis, I note that judicial review of arbitration awards in labor disputes is "among the narrowest known to the law." **Local No. 7 UFCW v. King Soopers, Inc**., 222 F.3d 1223, 1226-1227 (10th Cir. 2000). When parties contract to have disputes settled by an arbitrator rather than by a judge, they agree to accept the arbitrator's view of the facts and her construction of the collective bargaining agreement underlying their dispute. **United Paperworkers Int'l Union v. Misco, Inc**., 484 U.S. 29,

---

[7] I note that this decision was subsequently overturned by the Eighth Circuit sitting *en banc* on precisely the point the Plaintiff argues. **See United Electrical, Radio and Machine Workers of Am., Local 1139 v. Litton Microwave Cooking Products, Litton Systems, Inc.**, 728 F.2d 970, 971-72 (8th Cir. 1984) (citations omitted) ("[A] federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one. . . . Unless the arbitral decision does not draw its essence from the collective bargaining agreement, a court is bound to enforce the award and is not entitled to review the merits of the contract dispute.") (hereinafter, "**Litton II**").

37-38 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987).  Accordingly, in undertaking judicial review, courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." **Id.**  More simply put, an "arbitrator's factual findings are beyond review." **Kennecott Utah Copper Corp. v. Becker**, 186 F.3d 1261, 1266-1267 (10th Cir. 1999).

In the instant case, the Plaintiff's argument mischaracterizes the nature of the arbitrator's purported mistakes of fact in this case.  The cases the Plaintiff cites in which arbitration awards were vacated involved an arbitrator's blind, unsubstantiated, and incorrect assumption at the base of a decision[8] and another arbitrator's reliance upon what all parties later agreed was a factual impossibility[9] are readily distinguishable.  Ultimately, what underlies the parties' dispute in this case is not a matter of the arbitrator's undeniable and undisputed mistake or a total lack of evidence substantiating the arbitrator's findings, as the Plaintiff would have me believe, it is a matter of the arbitrator's interpretation of the evidence in making factual findings.

Here, as stated in the Award Brief, and as the Plaintiff concedes, the arbitrator reviewed the surveillance camera video footage "multiple times . . . practically on a frame by frame basis," and took testimony from Mr. Archuleta, whom she found to be credible about his version of the events depicted in the footage.  Whether the arbitrator found that the video footage itself shows that Mr. Archuleta bumped into a wall and knocked his money into the cash drawer or whether she found this to be fact based on her acceptance of Mr. Archuleta's testimony is a distinction without a difference for the purposes of my limited review.  The same is true of the arbitrator's finding that loose

---

[8] **Litton**, 704 F.2d at 396-97 (**overturned by Litton II**, 728 F.2d at 971-72).

[9] **Nat'l Post Office Mailhandlers**, 751 F.2d at 843-44.

currency was in the cash drawer. Relevant precedent clearly establishes that I am not free to vacate an arbitration award based on errors I may perceive in an arbitrator's assessing the credibility of witnesses or determining the weight to accord testimony. **NF&M Corp.**, 524 F.2d at 759. Nor am I free to reject an arbitrator's findings of fact if they are allegedly erroneous, actually erroneous, or if I merely disagree with them. **Misco, Inc**., 484 U.S. at 38; **Local No. 7 UFCW**, 222 F.3d at 1226. In this case, it would be improper, and I would exceed the purview of my narrow review were I to explore the Plaintiff's challenges to the arbitrator's factual findings and the evidence in support thereof. **See Kennecott Utah Copper**, 186 F.3d at 1269 ("It does not matter that an arbitrator's express factual finding may have ignored or contradicted some or even all of the evidence; his or her factual findings are beyond review.").[10] Accordingly, the Plaintiff's motion for summary judgment on its claim to vacate the Arbitration Award must be denied in this regard.

The Plaintiff argues also that it is entitled to summary judgment on the Defendant's counterclaims. In a one-paragraph presentation, the Plaintiff argues that it is entitled to summary judgment on the counterclaim for enforcement of the Arbitration Award based on the same logic underlying its motion for summary judgment on its claim seeking to vacate the award. The Plaintiff also baldly asserts that there is no genuine issue of material fact as to whether the arbitrator relied on factual mistakes in arriving at her decision. The Plaintiff's arguments are unavailing. First, a motion for summary judgment based purely on conclusory statements cannot obtain. **Rice v. United States**, 166 F.3d at 1092. Moreover, the arguments underlying the Plaintiff's motion for

---

[10] Even assuming, *arguendo*, that the standard of review was otherwise, I would be constrained to find and conclude that the arbitrator's findings of fact are supported by substantial, competent evidence.

summary judgment on its own claim were unsuccessful. For the reasons set forth *supra*, I do not explore or disturb the arbitrator's factual findings, and, therefore, cannot sustain the Plaintiff's contention that the arbitrator's reliance on mistakes entitles it to summary judgment. Accordingly, this component of the motion must be denied.

Finally, the Plaintiff argues that it is entitled to summary judgment on the Defendant's breach of contract counterclaim because the claim is preempted by the **Garmon** doctrine, which provides that federal courts must defer to the exclusive jurisdiction of the National Labor Relations Board (hereinafter, "NLRB") when a case involves activities arguably protected or prohibited by Sections 7 or 8 of the National Labor Relations Act (hereinafter, "NLRA").[11] **San Diego Building Trades Council v. Garmon**, 359 U.S. 236, 245, 79 S. Ct. 773, 3 L. Ed.2d 775 (1959). The Defendant counters that the **Garmon** doctrine does not apply in cases in which claim for breach of a collective bargaining agreement is alleged. I am persuaded by the latter.

In the instant case, the Defendant specifically brought its counterclaims under Section 301(a) of the Labor Management Relations Act (hereinafter, "LMRA"), which provides that federal courts have jurisdiction over suits arising out of collective bargaining contracts.[12] **See Smith v. United Mine Workers**, 493 F.2d 1241, 1243 (10th

---

[11] Section 7 of the NRLA protects an employee's rights to organize or not to organize into a union, to bargain collectively, and to engage in concerted activity for their mutual protection. Section 8 prohibits employers from committing unfair labor practices. **See Chamber of Commerce of the United States v. Brown**, 128 S. Ct. 2408, 2413, 171 L. Ed.2d 264 (2008). I will assume, *arguendo*, that a claim that an employer breached a collective bargaining agreement could be construed as a claim that the employer was engaging in unfair labor practices.

[12] Section 301(a) provides:
> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Cir. 1974). It has long been accepted as the law of the land that the NLRB's authority to hear disputes over unfair labor practices does not affect courts' jurisdiction over suits arising under Section 301 of the LMRA. ***See Trustees of the Kan. Bldg. Trades Open End Health & Welfare Trust Fund v. Lillich***, 889 F. Supp. 441, 445 (D. Kan. 1995) (collecting cases); ***see also Int'l Org. of Masters, Mates & Pilots v. Trinidad Corp***., 803 F.2d 69, 73 (2d Cir. 1986) ("[F]ederal courts have concurrent jurisdiction with the NLRB to hear cases involving both alleged NLRA violations and claims of breach of collective bargaining agreements."). Based on this authority, the Plaintiff's motion based on preemption by ***Garmon*** must be denied.

### B. The Plaintiff's Motion to Supplement the Record

The Plaintiff submitted a digital video disc of the surveillance camera footage described at length *supra* as an exhibit to its complaint. *Complaint* [#1], Ex. A-2. It subsequently filed a notice [#19] definitively announcing that the video was part of the administrative record because the video was before the arbitrator during the course of arbitration and was submitted as an exhibit in the active complaint in this matter. Despite this insistence, the Plaintiff also filed a motion [#22] to supplement the administrative record in order to include the aforementioned digital video disc. The Defendant opposed the motion, contending that the parties stipulated only to admission for purposes of the arbitration, not for any post-arbitration proceedings, and that the arbitrator's decision was based on other record evidence that may or may not be "depicted in the limited video tape." However, I need not address the sophistic logic underlying the contention that evidence upon which the arbitrator expressly relied is not part of the record, as I have found that I lack the discretion to review said evidence and the arbitrator's factual findings based thereupon. Accordingly, the motion must be

denied as moot.

### C. The Defendant's Motion for Summary Judgment

As a matter of course, "an arbitrator is confined to interpretation and application of the collective bargaining agreement," and is not free "to dispense his [or her] own brand of industrial justice." **Local No. 7 UFCW**, 222 F.3d at 1226-27. An arbitrator's award must "draw[] its essence from the collective bargaining agreement," and does not do so if the award is contrary to the express language of the agreement, if it "is so unfounded in reason and fact, so unconnected with the working and purpose of the agreement as to manifest an infidelity to the obligation of the arbitrator," or if it lacks factual support when "viewed in the light of its language, its context, and any other indicia of the parties' intention." *Id.*; **accord Steelworkers v. Enterprise Wheel & Car Corp.**, 363 U.S. 593, 597, 80 S. Ct. 1358; 4 L. Ed. 2d 1424 (1960).

The Defendant asserts that summary judgment is appropriate on its claim seeking to enforce the Arbitration Award because the arbitrator's decision drew its essence from the collective bargaining agreement. The Plaintiff objects and contends that the arbitrator's reliance on unambiguous and undisputed mistakes of fact discomfits the Defendant's conclusion. I find Defendant's position persuasive.

As noted above, the collective bargaining agreement between the parties contained a provision precluding the Plaintiff from discharging any Union-affiliated employee "without good and sufficient cause." *Complaint*, [#1], Ex. A-1 at 41-42. It is beyond dispute that in the Award Brief, the arbitrator framed her analysis as an examination of (1) two issues to which the parties had stipulated – whether the Plaintiff had suspended and, later, terminated Mr. Archuleta's employment with "good and sufficient cause"; and (2) whether the Plaintiff had discriminated against Mr. Archuleta.

*Id.*, at 2. The arbitrator linked such "good and sufficient cause" to the Plaintiff's requirement of employee honesty and policy of "immediate discharge" for any employee who "willfully engages in dishonest behavior" *Id.*, at 7. Utilizing this framework, the arbitrator evaluated the evidence before her in an attempt to determine whether the Plaintiff, bearing the burden of proof, established that Mr. Archuleta had indeed misappropriated the monies – *id est*, that he had willfully behaved dishonestly.

In these procedures, I find a clear and logical and concatenated progression from the language of the collective bargaining agreement to the Arbitration Award. I find nothing to suggest that the arbitrator strayed from the agreement to dispense her own vision of justice or otherwise acted outside of the scope of her authority. **See Misco**, 484 U.S. at 38; **Local No. 7 UFCW**, 222 F.3d at 1226-27. Thus, I conclude that there is no genuine issue of material fact as to whether the Arbitration Award is proper and should be enforced. Accordingly, the Defendant's motion must be granted and the Plaintiff's objections overruled.

The Defendant also seeks summary judgment on the Plaintiff's claim to vacate the Arbitration Award. My finding that the Arbitration Award is proper and should be enforced and the notion that there is any factual question that Arbitration Award should be vacated are mutually inclusive. The Defendant's motion must, therefore, be granted. To hold otherwise would be to effect a logical incongruity.

### D.    Concluding Ancillary Matter: *Sua Sponte* Summary Judgment

The Defendant asserts that it is entitled to summary judgment on both of its counterclaims, but only offers argument on its counterclaim to enforce the Arbitration Award. Ordinarily, I would note that the Defendant may not rest on its own *ipse dixit* to establish its entitlement to summary judgment on its claim for breach of contract and

deny the motion. *Rice*, 166 F.3d at 1092. However, in this case, I find that the Defendant's counterclaim seeking enforcement of the Arbitration Award and counterclaim for breach of contract are essentially coterminous. In its counterclaim, the Defendant asserts that the Plaintiff has breached the collective bargaining agreement by failing to implement and comply with the Arbitration Award. Thus, it appears that the remedy the Defendant seeks in filing this counterclaim is the same as that in its other counterclaim – enforcement of the Arbitration Award – and, thus, the claim for breach of contract is merely duplicative.

In this case on this claim, I find *sua sponte* that summary judgment is appropriate. Both of the required conditions for me to make such a finding have been met. I have already found that there is no genuine issue of material fact as to whether the Arbitration Award was proper and should be enforced. Additionally, as evidenced by its briefing on the breach of contract claim itself and on the question whether enforcement of the Arbitration Award is appropriate, the Plaintiff has had an adequate opportunity to address the facts and issues necessary to oppose summary judgment. **See *David v. City & County of Denver***, 101 F.3d 1344, 1358-59 (10th Cir. 1996). I, therefore, grant summary judgment in favor of the Defendant on its counterclaim for breach of contract.

## VI. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Plaintiff's Motion for Summary Judgment and Supporting Memorandum Brief** [#27] filed July 17, 2009, is **DENIED**

2. That the **Plaintiff's Motion To Supplement the Administrative Record** [#22] filed June 30, 2009, is **DENIED AS MOOT**;

3. That the **Defendant's Motion for Summary Judgment** [#28], filed July 17, 2009, is **GRANTED**;

4. That the Arbitration Award entered in response to Mr. Archuleta's grievances, as reflected in the December 1, 2008, Award Brief appearing in the record as Exhibit A-3 to the Complaint [#1], is **UPHELD**;

5. That the Plaintiff, King Soopers, Inc., is **ORDERED** to comply with the Arbitration Award;

6. That **JUDGMENT SHALL ENTER** in favor of the Defendant, United Food and Commercial Workers International Union, Local 7, against the Plaintiff, King Soopers, Inc., on the Defendant's counterclaims for enforcement of the Arbitration Award and for breach of contact;

7. That **JUDGMENT SHALL ENTER** in favor of the Defendant, United Food and Commercial Workers International Union, Local 7, against the Plaintiff, King Soopers, Inc., on the Plaintiff's claim to vacate the Arbitration Award;

8. That the Defendant, United Food and Commercial Workers International Union, Local 7, is **AWARDED** its costs to be taxed by the Clerk of the Court pursuant to FED. R. CIV. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

9. That any motion for an award of attorney fees **SHALL BE FILED** by April 1, 2010, and any response and reply **SHALL BE FILED** in the time and manner prescribed by D.C.COLO.LCivR 7.1.C.

Dated March 22, 2010, at Denver, Colorado.

**BY THE COURT:**

/s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge